UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANGELO CARZOGLIO,

                Plaintiff,                      **DECISION AND ORDER**

      -against-                                   18 Civ. 7780 (AEK)

ASSISTANT WARDEN KARL VOLLMER, *et al.*,

                Defendants.
-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

*Pro se* Plaintiff Angelo Carzoglio brings this action asserting federal constitutional claims against members of the staff of the Westchester County Jail ("WCJ"), as well as the County of Westchester. *See* ECF No. 2 ("Complaint" or "Compl."); ECF No. 6. Currently before the Court is Plaintiff's motion for sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, which seeks a default judgment to be entered in favor of Plaintiff, or, alternatively, a jury instruction as to "missing, destroyed electronic video information." ECF No. 64 ("Pl.'s Mem.") at 8. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On August 23, 2018, Plaintiff initiated this action, in which he alleges that he was sexually harassed and assaulted by Defendants while he was a pretrial detainee at the WCJ, and that two of the individual defendants—Defendant Archer and Defendant Torres—repeatedly searched Plaintiff in a harassing and retaliatory manner. *See* Compl. at 11-15.[1] Of particular

---

[1] Citations to the Complaint refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

relevance to the instant motion, the Complaint alleges that on four separate occasions between August 8, 2017 and October 6, 2017, Defendants searched Plaintiff in the law library of the WCJ, and in doing so improperly confiscated his belongings, ripped his documents, and executed the searches in a racially biased manner.  Compl. at 13-15.

Defendants filed their answer on December 22, 2021.  ECF No. 34.  On April 22, 2022, the Honorable Nelson S. Román, the District Judge to whom this case was assigned at that time, entered a case management plan and scheduling order and referred this case to the undersigned for general pretrial supervision.[2]  ECF No. 43, 44.  The parties then engaged in fact discovery concerning Plaintiff's allegations.

In a request for production dated July 17, 2022, Plaintiff requested video evidence of certain searches that are detailed in the Complaint.  See ECF No. 65 ("Carey Decl.") Ex. A ¶¶ 39, 58.  Plaintiff made the following request relative to Defendant Archer:

> To release all video relating to the incident[s] that took place on: 8-8-17, 8-15-17, 10-6-17, 10-13-17, relating to the search of Plaintiff's legal documents, 'racial profiling', harassment and denial of access to the court.

*Id.* ¶ 39.  Plaintiff also made the following request relative to Defendant Torres:

> To release all videos relating to the incident[s] that took place on 6-8-17, 8-8-17, 10-16-17 relating to the search and confiscation of Plaintiff's legal documents, harassment and denial of access to the courts.[3]

*Id.* ¶ 58.

---

[2] The parties subsequently consented to proceed before the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c).  See ECF No. 52.

[3] Although Plaintiff requested videos related to incidents that took place on October 13, 2017 and October 16, 2017, the Complaint does not contain allegations of occurrences that took place on those dates.  See Compl. at 5.  Additionally, Plaintiff requested video from an incident that took place on June 8, 2017; the incident that allegedly took place on that date is unrelated to the instant motion.  See id. at 12.

On October 31, 2022, this Court held a status conference with the parties to discuss the progress of discovery and to address any discovery issues. During that conference, counsel for Defendants reported that video of four searches requested by Plaintiff had not been preserved. In a declaration submitted in connection with Defendants' opposition to this motion, counsel for Defendants further explained why certain videos referenced in the Complaint were preserved while others were not. *See* Carey Decl. ¶¶ 6-9. At the outset of this litigation, counsel requested that the Westchester County Department of Correction preserve surveillance video "of the searches in which Plaintiff was strip searched under the belief that causes of actions related to those searches could withstand a motion to dismiss." *Id.* ¶ 6. Counsel did not, however, request that videos of other searches be preserved, because counsel believed "that the causes of action related to the remaining searches were not cognizable"; accordingly, these videos were not preserved. *Id.* ¶¶ 7-9.

Defendants prepared a Proposed Stipulation in an attempt to address the failure to preserve the videos, and shared the Proposed Stipulation with Plaintiff. *See* Carey Decl. ¶¶ 5-9; ECF No. 63 ("Proposed Stipulation"). Based on the Court's review of the Proposed Stipulation alongside the Complaint and the materials annexed as exhibits to the Complaint, it is apparent that the Proposed Stipulation attempted to capture the facts alleged by Plaintiff in the Complaint and supporting documents that would most likely have been corroborated by the videos of the four searches had those videos been properly preserved.[4]

---

[4] The Proposed Stipulation does not, however, capture those portions of Plaintiff's allegations that amount to opinions regarding the Defendants' conduct—*i.e.*, that Defendant Archer removed items from Plaintiff's legal folder on August 8, 2017 "for no reason at all," *see* Compl. at 13—or legal conclusions regarding Defendants' conduct, *i.e.*, that Defendant Archer acted with "racism" in deciding which prisoners to search on August 15, 2017, *see id.* at 14. Such opinions or legal conclusions are, at most, potential inferences that could be drawn from

3

Specifically, the Proposed Stipulation sets forth following facts:

(i) With respect to Legal Document Search No. 1: On August 8, 2017, at approximately 6:39 PM, Defendant Archer:
- (a) searched through Plaintiff's legal documents;
- (b) confiscated Plaintiff's two writing pens;
- (c) failed to issue a confiscation or contraband slip; and
- (d) performed such search and confiscation without a supervisor present.

(ii) With respect to Legal Document Search No. 2: On August 8, 2017, at approximately 9:00 PM, Defendant Torres:
- (a) searched Plaintiff's legal materials;
- (b) removed from Plaintiff's legal materials nine legal documents printed on pink paper;
- (c) made copies of Plaintiff's pink legal documents on plain white paper;
- (d) provided the plain white copies to Plaintiff; and
- (e) retained the pink originals.

(iii) With respect to Legal Document Search No. 3: On August 15, 2017, during a period of time beginning approximately at 5:19 PM and continuing through approximately 9:00 PM, Defendant Archer:
- (a) searched Plaintiff's legal materials upon his entry to the 3 Core Law Library;
- (b) searched the legal materials of a second "white [C]aucasian" inmate twice—once upon that inmate's entry into the 3 Core Law Library and once upon his exit;
- (c) declined to search two African American prisoners upon their entry into and exit from the 3 Core Law Library; and
- (d) searched Plaintiff's legal materials upon his exit from 3 Core Law Library and, in doing so, removed paper clips; and

(iv) With respect to Legal Document Search No. 4: On October 6, 2017, Defendant Archer:
- (a) searched Plaintiff's legal materials;
- (b) ripped the folder in which Plaintiff's legal materials were held;
- (c) confiscated the book notes that Plaintiff used to mark his legal pages;

---

the conduct that would have been visible in the missing videos, rather than evidence that would have been apparent from the videos themselves.

    (d)    removed from Plaintiff's legal materials certain legal documents printed on pink paper;

    (e)    made copies of Plaintiff's pink legal documents on plain white paper;

    (f)    provided the plain white copies to Plaintiff; and

    (g)    retained the pink originals.

Proposed Stipulation at 4-5; *see also* Compl. at 13, 40-42 (regarding Search No. 1), 13-14, 44-46 (regarding Search No. 2), 14, 49-51 (regarding Search No. 3), and 14-15, 52-54 (regarding Search No. 4).

During the October 31, 2022 status conference, Plaintiff stated that he received the Proposed Stipulation from defense counsel, but did not want to sign the Proposed Stipulation without first conducting additional legal research. The Court authorized Plaintiff to file a motion for sanctions and set a briefing schedule. *See* ECF No. 62. Plaintiff's motion for sanctions was received and docketed on December 1, 2022, and Defendants submitted their opposition on December 21, 2022. ECF No. 66 ("Defs.' Opp.").

## LEGAL STANDARDS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Pursuant to Rule 37(e) of the Federal Rules of Civil Procedure,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;

> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"'[A] district court has broad discretion in crafting a proper sanction for spoliation . . . to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine.'" *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018) (emphasis omitted) (quoting *West*, 167 F.3d at 779). "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (quotation marks omitted); *accord Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 581 (S.D.N.Y. 2017). Additionally, "[s]anctions should be tailored according to the prejudice suffered by the party seeking sanctions and the destroyer's degree of culpability." *Ottoson*, 268 F. Supp. 3d at 580.

## ANALYSIS

There is no dispute that (1) the four surveillance videos should have been preserved, (2) Defendants failed to take reasonable steps to preserve them, and (3) the videos cannot be restored or replaced through additional discovery. *See* Defs.' Opp. at 4-5; Carey Decl. ¶¶ 6-9. Nor is there any dispute that Plaintiff has been prejudiced by Defendants' failure to preserve the videos—indeed, Defendants effectively concede as much. *See* Defs.' Opp. at 5 ("this Court could and should 'order measures no greater than necessary to cure the prejudice'" (quoting Rule 37(e)(1)). Accordingly, the only issue before the Court is what measures to impose to cure the prejudice that Plaintiff has suffered as a result of the missing videos.

As an initial matter, Plaintiff's request for a default judgment is denied. Pursuant to Rule 37(e), Plaintiff must show that Defendants "acted with the intent to deprive [Plaintiff] of the information's use in the litigation" before the sanctions listed in subsection (2) of Rule 37(e)— *i.e.*, adverse inference, dismissal, or default judgment—are available. Fed. R. Civ. P. 37(e)(2); *see Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *15 (S.D.N.Y. Mar. 12, 2018).[5]

Counsel for Defendants admits that he provided instructions regarding the preservation of certain videos referenced in the Complaint, but not others, based on his own evaluation of the potential merits of the allegations. This is not the appropriate standard for an attorney to apply in the context of his clients' document preservation obligations; parties and their counsel cannot make unilateral determinations upon receipt of a complaint of which allegations merit the preservation of documents and which do not. Rather, preservation instructions must be sufficiently broad to encompass the documents and other materials than can reasonably be anticipated to be requested as part of the discovery in the litigation. Counsel's conduct here fell well short of that obligation. Nevertheless, Plaintiff has not demonstrated that the failure to preserve these videos was an intentional effort to prevent Plaintiff from having access to the evidence for this litigation. *See* Pl.'s Mem. at 6, 8. Nor does the record support that Defendants—who upon learning of the unavailability of the videos offered to stipulate as to what the videos would show—failed to preserve the evidence in bad faith or with an intent to deprive. *See* Carey Decl. ¶¶ 7-9; *Man Zhang v. City of New York*, No. 17-cv-5415 (JFK) (OTW), 2019

---

[5] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Plaintiff along with this Decision and Order.

WL 3936767, at *5, 7 (S.D.N.Y. Aug. 20, 2019) (finding Rule 37(e)(2) sanctions not warranted where spoliating party "admitted that they failed to take *any* steps to preserve the video surveillance footage and telephone recordings prior to their destruction" but "once ordered by the [c]ourt to investigate, [ ] did so immediately and transparently reported their findings").  For these reasons, Plaintiff's request that the Court enter a default judgment as a sanction for the failure to preserve the videos is denied.

The proper remedy in this case is one that will put Plaintiff in the "same position he would have been in absent the wrongful destruction" of the videos.  *See West*, 167 F.3d at 779; *Ottoson*, 268 F. Supp. 3d at 580.  If the videos had been available, they would have shown certain actions by certain Defendants, and in light of the failure to preserve these videos, it is appropriate, given the facts and circumstances of this matter, to conclude that the videos would have shown what Plaintiff alleges the videos would have shown.  What the videos alone would not have established, however, is the state of mind of the Defendants whose actions are captured in the videos.  Nor, of course, do the videos themselves establish whether or not the actions taken by Defendants amount to violations of Plaintiff's rights.  Accordingly, as a sanction for Defendants' failure to preserve the surveillance videos of the four searches specified above, Defendants will be deemed to have admitted certain facts alleged in the Complaint with respect to those videos.  Specifically, Defendants are deemed to have admitted the facts recited in the Proposed Stipulation, *see* ECF No. 63, which are also recited above in the Background section of this Decision and Order.  The facts listed in the Proposed Stipulation effectively adopt the relevant facts as presented by Plaintiff in the Complaint regarding what would have been visible in the videos of the four searches, albeit without conceding any facts related to Defendants'

8

states of mind or the propriety of their actions.  *Compare* Compl. at 13-15, *with* Proposed Stipulation at 4-5.

This solution is also consistent with Plaintiff's requested sanction for a jury instruction as to the "missing, destroyed electronic video information."  *See* Pl.'s Mem. at 8.  If this matter proceeds to trial, the facts that Defendants are deemed to have admitted may be entered into evidence, and the jury will be instructed that they must consider these facts as true.  *Cf. Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout the litigation." (cleaned up)).  And subject to any potential pretrial ruling that might limit Plaintiff's claims, Plaintiff will be permitted to cite to the allegations that have been deemed admitted to make arguments to the jury related to his claims that Defendants improperly confiscated his belongings, tore his documents, and executed the searches in a racially biased manner.  *See* Compl. at 13-15; Pl.'s Mem. at 1.  Additionally, during the parties' anticipated summary judgment motion practice, they will be able to rely on the allegations that have been deemed admitted as facts that are not in dispute.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for sanctions (ECF No. 64) pursuant to Rule 37(e) of the Federal Rules of Civil Procedure is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to termination the motion at ECF No. 64.

9

A telephonic status conference is hereby scheduled for May 11, 2023 at 12:00 p.m.  The purpose of the conference is to discuss next steps in this case, including a schedule for briefing Defendants' anticipated motion for summary judgment.  Counsel for Defendants must make arrangements with the appropriate correctional facility to have Plaintiff available via telephone.

Dated: April 28, 2023
       White Plains, New York                       **SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed to the *pro se* Plaintiff by Chambers at Plaintiff's address of record on the docket.